312-09-86. In re A.S. a minor. Appellee by Judith Kelly v. Ashley R. Appellant Louis Millo. Mr. Millo, you may proceed. May it please the Court. My name is Louis Millo. I represent the respondent, Mother Ashley R. We are asking the Court to reverse the trial court's finding of neglect for a simple reason. There was no evidence that this minor was neglected. The facts of this case are straightforward. My client was a party to a previous juvenile court case. In that earlier juvenile court case my client was found unfit at a dispositional hearing. The juvenile matter was closed prior to my client regaining her fitness. However, the father in that case was found to be a fit parent and was granted sole guardianship over the minor and the case was closed. DCFS of course was discharged as a temporary guardian. The final permits review order, closing case, provided that any contact between my client and her daughter was to be supervised by DCFS or a DCFS designee. Subsequently, while still deemed unfit, my client had contact with her daughter, which was supervised by the father. Because my client had contact with her daughter that was not supervised specifically by DCFS or its designee, but by the father, the legal guardian, the state filed a new wardship petition alleging that my client's daughter was neglected by reason of an injurious environment. Well, how important is the court order that says the client is prohibited from visiting without that kind of supervision? I think it's of minimal value. So the court order is de minimis? Well, our position is that it's not a valid order. However, assuming it was valid, I believe that ultimately the law requires that we show that the minor was actually neglected, either in terms of medical needs, nourishment, shelter, and so forth. So it adds nothing to the ability to demonstrate that this child was neglected or not neglected. It's important to point out that there's no evidence presented that my client was left alone with her daughter, and there was no showing that my client harmed her daughter while visiting with her daughter. Well, your client was found to be an unfit parent. That's correct. And that led to the genesis of an order by the court to prohibit the unsupervised visitation because of that. And then that was totally ignored. It was, but there again, there is a method for addressing whether the court order was ignored versus whether there's neglect. Those are two very separate issues, and one of them is, did my client violate a court order? If so, there's specific provisions under the Act for pursuing that. I believe 226 provides for how enforcement will go about in terms of showing of a citation for a rule to show cause essentially for contempt. That's the method for addressing whether or not there was a violation of the court order. So this is not, the state is not without a remedy, but what I'm proposing and what I'm arguing is that that remedy is not to simply allege that the child was neglected. We happen to think that the state would not have ultimately prevailed on this rule to show cause for a simple reason, and we don't believe that the order of protection or protective order was properly entered, but that would be the recourse for the state. Now that argument is not before us about the previous order, isn't that right? Well, we... I mean, it's not really jurisdictional for us to consider that now. It wasn't appealed properly? Well, the assertion is that it's not before the court. We certainly don't think it's necessary that the court's decision today as to whether this child was neglected to address that specifically because we don't think there was evidence presented establishing that this child was neglected. However, I will quote People v. Thompson, states, quote, a void order may be attacked at any time or in any court, either directly or collaterally. An argument that an order of judgment is void is not subject to waiver, close quote. And that case goes on to state that courts have an independent duty to vacate void orders and may sui sponte declare an order void. But there's a big jump to say that order was void, isn't there? I don't believe it is because the order, number one, has been alleged in the petition. I also think that it's before because it's been alleged as being violated in the petition. In this case, it is properly before this court just simply because this case is properly before this court jurisdictionally. But having said that, I'm sorry. Go ahead, finish your... But I do think that on the face of the order, it is clear that it is in violation of the Juvenile Court Act. And so far as, and that order, by the way, was introduced as part of an exhibit. And that it is, and we've cited the cases, but clearly you can tell from the order itself that there is no specified termination age. There's no durational component to that. Our position is that, and we've again cited the cases in support of our condition, we have cited numerous cases that requires a durational element to these protective orders or at least a predetermined opportunity to modify that judgment or that condition that's set forth in that protective order. And we've cited Section 225 of the Juvenile Court Act. And steps could have been taken by a lawyer to do that, right? Steps could have been taken, motions could have been filed, none of which happened. To ascertain a specified? To remedy what you thought was missing. Well, I can say we did not agree that it should be entered in the first place and whether or not that would have been corrected or not. I don't know what affirmative obligation the party, the respondent, would have to correct the court order. It would not necessarily have served our purposes. But having said that, I don't know that that would have been possible. Keeping in mind that this case, the termination, the warship was terminated, the case was closed, I think it would have been in the nature of a motion reopening the case. To modify it. Trying to come back in and modify the case. That would have been an issue. Number one, can we reopen the case? Will the court allow us to open the case? And then only then will we consider whether or not we should take some corrective action with respect to that particular motion. Back to the injurious environment. Our Supreme Court has said that's an amorphous concept. For clarity, I guess, purposes, they say that. So what you're suggesting would not fit the definition of injurious environment. If you have a person who was found to be unfit and was ordered not to have any contact with the child unless it was supervised by the appropriate bodies or people. And whether or not that in and of itself creates an injurious environment. That's your argument, right? Yeah, our argument is that it certainly doesn't create any kind of a presumption of an injurious environment. There's nothing about the violation, the naked violation of an order of protection of this nature that presumptively or conclusively creates or even creates a prima facie case of an injurious environment. The burden remains on the state to come forth with real evidence that as a result of violating this order, something harmful happened to this child or that there were some other aspects that they've alleged in their petition that has harmed this child in terms of the care of the child, medical needs of the child, and so forth and so on. That has not happened. The state has decided we're going to ask you on the basis of this violation alone, and they've added other things, but I would argue that the crux of the court's decision alone is really the violation of the order of protection. See, what I'm troubled with with that argument is that there are plenty of cases which indicate that it's an injurious environment if you allow the children to be in the presence of someone who could be dangerous or has other problems even though the child at the time is not directly injured physically but because of the potential. I mean, there are cases dealing with allowing the child to be in the presence of a known person who commits domestic violence all the time on the mother, and just being an even though the child herself or himself was not battered by the person. So there are all those cases, aren't there? Helping out here, what happened to the father after this incident? Well, I... I mean, the child is placed in the grandmother's home, is that correct? Well, the father is residing with his mother, and the child is also living with both of them essentially, but was really in the custody of the father. Okay, okay. But is wardship in DCFS at that point? No. So the case was previously closed. Wardship was terminated. The father, not my client, was named a guardian, and the child was returned to the father's custody. Of course he was found fit. And so in effect what differentiates this from the cases you've suggested, Justice Carter, is that here we have a legal guardian who is fit, who is presumptively capable of protecting and watching over a child, and that would not have occurred... the court would not have had confidence in naming him guardian if that was not the case. And so what these other cases tend to show is that there was nobody supervising, nobody at all, that these unfit parents were in the custody of these children, but there was nobody supervising. The father still remains the custodian? Well, of course this is a new case, and I think that may be the case, but I'm not... Isn't this really using a sledgehammer, the Juvenile Court Act, for a simple contempt proceeding? I would argue that that is the case, that in effect what has happened is that we can... a neglect, manufactured neglect, by always closing a case if there's an unfit parent saying, well, you're unfit, but it's not enough that you're unfit. We're going to deny you contact with your child unless it's supervised by DCFS or DCFS doesn't need. And I don't think it's a stretch of the imagination, and oftentimes there may be some contact that is not supervised, and if that's going to be enough to generate a neglect finding, the state's basically set up a parent to bring him back into the case and argue that there was neglect. The important thing to note in this case is that, keep in mind, this was not a situation where the previous court prohibited contact between my client and the child. That's not the case. The contact was acceptable so long as it was properly supervised, and in the case of the trial court, they felt it should be DCFS or a designee. I want to ask a question specific to that. In the final order that was entered, closing the case to the protective order, are there provisions for any ongoing visitation? Was there a designee name? No, there wasn't. It was just a recommendation made at the close of the case. It's not before the court, but typically there's no notice. It's just simply a recommendation that's made, and either it's adopted by the court or it's not adopted. And in this instance, it was adopted by the court. Really no hearing, actually, after the hearing. And so, no, there was no designee, there was no schedule of visitation set forth. There was nothing other than they're going to have to be supervised. And it's important to note that, and that's the point, is that contact was not prohibited. There wasn't anything inherent about my client being around her child that was harmful to the child. It was just the context of that contact being sure that there was somebody responsible to supervise that contact. In the case of the trial court, they felt that it should be a DCFS, DCFS or DCFS designee. We would argue that a legal guardian who's a fed parent is presumptively capable and able to supervise a visit. And that further detracts from any presumption, which we don't think there ought to be, that there's neglect of this trial. So it's not, the contact alone doesn't do anything. Counsel, that's two minutes. So the only purpose for DCFS to supervise a visit, typically, is to report back to the court, how are the visits going, for purposes of deciding what to do in terms of a goal. But this case was closed without leaving, without tying up that reason. There was no visitation plan in place, no way for this woman to see her child. Correct. So since the case was closed, there was no reporting back to do. So the normal function a DCFS would have, or a designee, was really irrelevant. So the only other thing that would happen would be that it would require my client to pay for the services of a DCFS or DCFS designee to supervise her visits, which my client is indigent, as many clients are in juvenile court. And the effect of that is either going to terminate her contact with her child or substantially reduce her contact with her child. And I don't think that's intended under the Juvenile Court Act. I don't think that's the intent. That's a good public policy. What's the process for doing that in a closed case? For someone who has a closed case to contact them and to continue... I mean, for services to continue in a closed case. I've never known DCFS to continue any services when they've closed a case. And typically DCFS will not. I don't know, but I don't know that DCFS would have any involvement in this case. Once warship is closed and their guardianship has been terminated, they have no interest in this case. And typically a parent will not be able to avail themselves of DCFS to get assistance in the supervision. They will have to go to a designee, like a children's home or a bridgeway or something of that nature, and pay them to have a person there to supervise the visits. And in the case of my client, she can barely afford one to two hours a week with her child. And the problem that we have with the order of protection is it doesn't give us any guidance, as you would expect from an order of protection. It's not really dissimilar from an order of protection in any other case, that you would expect to have some time limits. You would expect to know what the conditions are, what alternatives may be available, and what could happen that could trigger an opportunity to modify that order. So there's no guidance from that order of protection as to what the court would even consider to change or modify or terminate the requirement for DCFS supervision. Wouldn't there be a need for clarification in and of itself, justify going to court seeking a modification of the order? It would justify it, but of course, once the case is terminated, once the case is closed, there are situations where, particularly in a case where the client has a public defender, where the public defender is discharged, and so the client may not always have recourse to an attorney to go back and seek that kind of modification. Particularly if the issue doesn't arise immediately, sometimes parents don't always understand the ramifications of that order. It can be done very summarily, very quickly towards the end of the closing of the case, and they don't realize it, maybe months into it, and realizing I haven't seen my kid for several months, what can we do? Counsel, thank you. Counsel, you may respond. I think it's important to keep the timeline in mind here. This was an order that we're all arguing about, which was not included in the Record on Appeals, so we don't even have the order in front of us, that was entered on May 14, 2012, at the time the case was closed. I thought the implication from the file was that this was at the disposition order of the initial neglect adjudication, that mother was adjudged to be dispositionally unfit, father was adjudged to be dispositionally fit, guardianship and wardship was placed in the father, the case was closed and an order was entered that mother was to have two one-hour supervised visits per week, and all the visitation had to be supervised. And in fact, it's quite clear from the record that she was enjoying that supervised visitation. We have a witness, a former caseworker came in who spoke with her at one of the supervised visitations and also testified that the visitations were going quite well. So the visitations were enforced, were being supervised. Mother, perhaps unwisely, told the caseworker that in fact she was seeing the child outside the visitation, she was sneaking into dad's house when his grandmother was sleeping, and she was spending more time with the child, she was seeing her beyond the one-hour, twice-a-week visitation ordered by the court. Then we have the two instances in Springfield on May 28th or something, so May 25th, within two weeks of the court order where she was going to have supervised visitation, where the car is stopped for whatever reason, and the car includes father, mother, and the child. And then we have the time when she told her later in May that she was seeing the child outside of the visitation. And then we have the grandmother coming home to check on her great-granddaughter and finding a respondent mother in the room with the dad and the child. So that all occurred within, that last episode occurred within six weeks of the entry of the order. So the order was entered May 14th. She breaks the order May 25th that we know of and tells them the end of May and is still breaking it in June. We don't have the order in front of us. We don't know what went into it. Counsel never contended in his brief that it was a void order. There's no reason to believe the order is void. The court certainly had subject matter jurisdiction. It would help perhaps if we had the order, but counsel did not include that in the record on appeal. So what we have is an order closing the case, which was an appealable order. If mother was dissatisfied with the order, didn't know how visitation was going to be set, didn't understand why it had been entered, had no notice, all of that could have been handled in appeal. She would have had the right to counsel appointed for her to handle the appeal. She had 30 days from the entry of that order on May 14th, 2012, to file a notice of appeal, and she did not do that. Instead, she flagrantly and repeatedly violated the order, and the court had, at the hearing, the court re-familiarized itself with the file, took judicial notice of the earlier file, remembered apparently why he had entered that order in the first place. Mother apparently was found dispositionally unfit because she had at that time unaddressed mental health and or domestic violence issues, and he considered that at the time he was considering what effect, you know, the violation of the order or the fact that she was having visitation outside of the supervised visitation had on the environment of the child. So the judge did not say, you have violated the order, and therefore I am finding that the child's environment is neglected. In fact, the judge considered all the evidence that came in, including the fact that she knew that visitation was to be supervised and she knew that she was violating the order, and that father was not only allowing her to violate the order and also violating the order, but lying to the caseworker about it, in considering that that created an injurious environment. I would also point out that when this... When did the father have contact with the caseworker? I think it was when he dropped, let's see. On June 13th, the caseworker asked the father about it, and he denied the responder was staying with him and was having unsupervised contact. I don't know whether it was when he was dropping A.S. off for a supervised visit. It didn't put that in my notes, but it's on page 24 of the record. He told the caseworker that on June 13th. And of course, the mother would have been having unsupervised contact with the minor on May 25th when they were all in the car in Springfield, so that had already occurred. And also the judge was concerned that father was lying about that. I would also point out that after this petition... I mean, when you restore someone's rights by finding them fit, isn't DCFS designating that he is a person that should have all the rights and benefits and responsibilities to his child? I guess maybe that's why this is something that should be the nature of a contempt proceed. I mean, wouldn't he be considered a designee? No. There's no evidence that he was made the designee or that he was considered the designee. But he's the fit father. I mean, I'm not my child's designee? I mean, you know, what is it then? Okay, let's flip the situation, and let's say what we have here is a fit mother and a father who's found dispositionally unfit and has mental health and domestic violence issues. Father has not addressed the issues, and mother has full custody, and then she is told at the time that the case is closed not to have daddy around the child, and the only visitation daddy can have with the child is supervised by DCFS or a designee, not living as a family, coming into the home where the family is living, or traveling together as a family because father has unaddressed mental health and or domestic violence issues. That's what we have in this case, where the trial judge found that the case could be closed, the initial case could be closed because he limited mother's visitation rights to supervision by DCFS or a designee. Father was not considered a designee. If that had been the case, father would have presented that evidence, would have put that in his answer. Why did we flip genders here? Was there a point? There was an example given earlier, and also because I think it's just more easy to see the father as the person committing domestic violence. I just flipped it. It's fairly gender-biased, I would say. I'm offended by that. Oh, yeah, sorry. So it was not my intention. Uh-huh. I guess we don't know what he was told. We don't have anything here that he was told. I mean, I don't see that he, I mean, you know. The record just tells us that father and mother were both present at that May 14th hearing, so he was aware of the order that was entered. But the order, as I understand it, only says that her visitation is to be supervised by DCFS or a designee, and I don't know that that means absolutely without question a parent isn't a designee. I don't know if that's statutory. Is that what you're saying, is that a designee has a legal, has a definition? I mean, that's what I'm trying to get to. What is the definition of a designee and who is or is not based on all you read is DCFS, which I understand is an agency person or a designee, and from time to time you'll see designee cannot be or is grandma, can't be this person. But that term, just that bold term, I don't know, does it have a legal definition? Well, we don't know because we do not have the proceedings in the original case before us. We don't know what happened on May 14th. We know the allegations contained in the court order that the people put in the petition. We know that the order was given to the judge during the hearing and the judge took judicial notice of the file and the court order. We know that the respondent did not include that court order in the record on appeal. We don't know what discussions of the term designee were had on May 14th. We do know that DCFS, the caseworker, was in fact supervising the visitation, that mother was having her two one-hour-a-week visitations with the child, supervised by a caseworker or somebody. And we know that in the, well, and all of this is going on and there is no record that child has bruises or is not eating or anything like that. The caseworker says that visitation's going okay. I mean, to get to injurious environment, you know, the violation of the court order seems to be the basis for this, that this court order's being violated. And so, but in order to rely on that, it seems that, you know, the amorphous concept that there needs to be something else to, you know, we can't, you know, this is a dangerous situation because the court order says it has to be supervised. Because mother presented some sort of danger to the child. She was found dispositionally unfit. But they're always in the presence of somebody who has been found dispositionally fit. So that's what I'm saying. What's the other evidence? I mean, I understand what you're saying, but she's in the presence of somebody who's been found dispositionally unfit as well as in the presence of somebody who is dispositionally fit. And the allegations, as I see, I mean, a lot of it is the fact that she flagrantly violated the court order. She laughed about it. And it seems to me that that's the meat of this, is that, you know, you're not going to disobey this court order. And if that's where it's at, this is the wrong step. You know, this is the wrong type of proceeding to have. At the time the judge closed the case, the judge thought that her presence with the child, apparently with the fit father, created a danger to the child. And the order does not say that the mother can have visitation only with the father and DCFS or a designee. The order says that with DCFS or its designee. If the father were considered a designee, there'd probably be no reason to put that in at all, or anything about DCFS, or in fact would have listed him as a designee. We don't have the record of what went on when the case was closed as to why the court felt he had to limit her visitation to one hour twice a week supervised by DCFS or a designee. It exists. We don't have it. The court had it. The court refreshed its recollection with regard to the hearing. This all occurred within, this filing occurred within six weeks of the entry of the order. One week later, a shelter care hearing was held in early July, and the child was removed from fatherly temporary custody and guardianship was placed back in DCFS, where I believe it still remains. And again, there was something, there was some reason that the judge entered that order. The mother now has a problem with the order, or even then had a problem with the order, did not take the opportunity to appeal the order, which she could have done as a part of closing the case, and instead just violated the order. Can I follow up on a question my colleagues have asked with regard to the sledgehammer? I think there was a judge, Justice Holbrooke, and contempt was mentioned. Can, in the manifest, if the standard review is manifest, wait. The fact that the wrong remedy is selected, can that go to the neglect determination, disturbing the neglect determination, because they go all the way to this injurious environment without clarity for us with regard to the previous order. I mean, as you point out, we don't have it. And so we don't have, like, the parameters. And that's the point everybody's asking about. What are the parameters from this order that's absent before us? And violating a court order is traditionally a contempt kind of thing. Now it can be sometimes the continuation of an injurious environment. There are cases like that. But many times it's a contempt situation, and that's what everybody's. . . Either or both avenues could have been pursued. In this case, the people felt that it created an injurious environment for the child because the fit parent was not restricting the visitation as the court had seen necessary. I guess the reason I'm not asking this question is because no one doubts that, evidently. I don't think anyone really doubts that an order was violated. But does it in and of itself represent injurious environment? No, it doesn't. The people also presented evidence. I don't really recall what it was. That mother was supposed to be following certain tasks, and she was found to be dispositionally unfit, and that she had not even started to comply with any of those tasks. Therefore, whatever danger the court held she posed on May 14th, she still posed on May 25th, and she still posed on June 29th when the petition was filed. And those are the conditions that the court's looking at, what was going on in that six-week period between May 14th and June 29th. Not just the fact that she violated the order, but that the violation of the order was that she was having unsupervised, frequent contact with the minor, which the court felt was inappropriate given her dispositional unfitness. Scott's last two minutes. I don't know if that answers your question. Is there a connection between the absent order and why she was found to be unfit? And the nexus we have to have is to support whether or not this ruling was against the manifest way of the evidence. I don't know that you do. It probably would help if the court was asked to take judicial notice if counsel or respondent had included on appeal perhaps both records or certainly a transcript of that May 14th hearing. To put it very simplistically, should we have learned how bad, evidently, she was to get an unfitness finding to determine whether or not an injurious environment was present? I don't think you need to. The judge had entered the order. The mother had not appealed the order. So the order was in full force. It was quite recent. And the mother was not addressing those situations. And I don't think that this court needs to have in front of it. It might help. But it was a separate proceeding of which the court took judicial notice in reaching this decision. But we don't know. We are operating in a vacuum. We don't even have a copy of the court order. So we don't know whether it was entered as part of a permanency review, as counsel said today, or as a dispositional hearing following the initial adjudication of neglect. What we have here is what the court felt was a minor who was neglected, not whether mom was neglectful of violating the order, dad was neglectful for lying to the caseworker, just that the whole situation created an injurious environment for the minor. Thank you. No further questions. Thank you. Counsel, you may reply. Thank you. We would submit that this was a wrong approach, filing a new wardship petition. There is a correct approach that was not filed. All the concerns that this court has raised as to whether the validity of the order of protection, whether the degree of unfitness of the mother, all those issues could have been brought forward in the context of a citation that showed cause, whether or not that order was validly entered, whether we had proper notice, whether we had a proper hearing. All those things could have been addressed in that context rather than file a petition alleging that the child is neglected and going that route. The bottom line was that the state had two choices, they always have multiple choices, but there's always a better choice and a worse choice, and they took the worse choice. Now, there are other allegations. Yes, there's allegations that the father lied to the caseworker about contact with the mother, but that's not evidence of neglect of a child. It's only evidence of a person's honesty or lack of trust in the government agency. There's discussion about him dropping his order of protection against the mother. Well, you know, maybe that's not such a bad thing. It may allow the mother to have contact with him while she's having the visits they're supposedly supervised without being arrested. That's been part of court findings on a juris environment, people not pursuing contempt hearings or orders of protection when they're battered and allowing it to continue. Right. Well, in this case, it's a fact-specific situation, obviously, but how else was there going to be visits? You know, it might have been a lot easier to not have that order of protection as an impediment if he was dropping the kids off or whatever the arrangement was going to be. It doesn't necessarily mean that it was a bad thing. The father eating chips and dip on his bed in the bedroom. It may be a bad example of what to eat and where to eat it, but it hardly proves neglect. The mother's honesty about disclosing that she was having visits outside of the designated PCFS visits, it's really hardly evidence of neglect. If anything, it really was against her self-interest to make that disclosure. Chuckling about it doesn't make it sinister. And they knew about it. You know, and I've already addressed the mental health issue. The bottom line is that this is a new case. We're looking at this case fresh. The state doesn't get to go back and say, all the evidence in the previous case we get to throw into this case. That's what they're trying to do. But things change. That petition was filed a long time ago in the other case. A lot of water's been under the bridge. This court doesn't know that. All this court knows is that they're alleging that my client has some mental health issues. Well, where's the evidence? The evidence has to be there. You can't pretend just because she was unfit, still unfit, that she remains mentally ill. Even if you do assume that, you can't presume that there's a relationship between her mental illness and the child. And Refase B requires that we show a nexus between the allegation of mental health and actual harm to the child. The point is that even fitness is not a static concept. Yes, it may have been six weeks since the court still determined she was unfit. It doesn't mean things have not improved. The fact of the matter is that there's no evidence of any domestic violence since the case was closed. It appeared as if everything was going well. And, again, there's no harm to the child. So we would essentially, the state is arguing, well, all these variables we haven't put any evidence on because ultimately we really are relying on the violation of the order of protection. The state's appellate brief makes it very clear. This is what the court has relied on. And it refers to my client's violations as flagrant violations. That is designed to impress upon us that the purpose of finding this child neglect was the violation of the order of protection. And, again, there is the fundamental question of was there a violation in the first instance. And, yes, we do not have the hearing transcript of the permanency review when this case was closed. But we do have a copy of that order of protection I believe was introduced in this case. And we do know what the contents of that, I should call it order of protection, the permanency review order that contains the language that I'm calling a protective order or order of protection. We have that language. We can look at that order and we can see in that order that there is no specified time frame. There's no durational limit. There's nothing that comports and complies with the Juvenile Court Act. And we know that if the court, the Juvenile Court, is operating under limited jurisdiction and it can only do what the Juvenile Court allows it to do and the Juvenile Court Act does not allow it to do what it did. Thank you. Okay. Thank you, counsel, both, for your arguments in this matter this morning. It will be taken under advisement and a written disposition shall issue. The court will stand in brief recess for panel change.